**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**JAMES ROBERT DELKER**                                                                          **PETITIONER**

**VS.**                                                            **CIVIL ACTION NO.: 3:13CV950-CWR-LRA**

**RICK MCCARTY, Interim Commissioner,
Mississippi Department of Corrections,
and JIM HOOD, Attorney General of
the State of Mississippi**                                                                          **RESPONDENTS**

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

James Robert Delker has filed a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody. For the reasons more fully set out below, the Court finds that the Petition should be dismissed.

Delker was convicted in the Circuit Court of Lauderdale County of felony driving under the influence (DUI), and he was sentenced as a habitual offender to five years in the custody of the Mississippi Department of Corrections. His conviction and sentence were affirmed by the Mississippi Court of Appeals. *Delker v. State*, 50 So. 3d 309 (Miss. Ct. App. 2009). Delker appealed to the Mississippi Supreme Court, which also affirmed the conviction and sentence, albeit on different grounds than the Court of Appeals. *Delker v. State*, 50 So. 3d 300 (Miss. 2010). When Delker filed his Petition for a Writ of Habeas Corpus, he was still in custody pursuant to that sentence, although he has since been released.

**FACTS**

The incident giving rise to Delker's conviction occurred on Christmas Eve night, 2005. At about 11:00 p.m., Ben Langston, the Chief of Police of Marion, Mississippi, was in his patrol car at an apartment complex on the south side of Old Country Club Road. Chief Langston observed a

car go past him on that road, at a speed that he believed exceeded the posted limit. At that time, Chief Langston believed that Old Country Club Road was within the city limits of Marion, but he learned shortly before trial that it was not.

Chief Langston pulled onto Country Club Road behind the speeding car, intending to stop it and give the driver a warning; however, despite Langston's turning on his flashing lights, the car did not stop. At one point, it made a left turn around another vehicle that was stopped at a stop sign. Langston estimated that both cars got up to sixty to sixty-five miles an hour during this time. Langston called the sheriff's department to let them know that he was in a car chase and to request back up. Ultimately, the car stopped in a driveway, and Langston realized that Delker was the driver. Langston approached Delker and asked him why he had not stopped earlier; Delker replied that he knew that he was going to jail, and he wanted to get his car home, rather than leaving it on the side of the road.

While talking to Delker, Langston smelled alcohol, so he asked Delker to get out of the vehicle to talk to him. According to Langston, Delker had trouble getting out of the vehicle, he smelled like alcohol, his speech was slurred, and he had problems standing. Langston handcuffed Delker, because he knew that his driver's license was suspended, and placed him in the backseat of his vehicle. Looking into Delker's vehicle, Langston saw a beer can thrown onto the passenger seat. Later, Langston found a nearly-empty whiskey bottle in the floorboard of the back seat. Langston also found some groceries in the car, which he left on Delker's doorstep. He called his dispatcher to check the status of Delker's driver's license, and he was told that Delker did not have a valid license. After about five minutes, several deputies arrived in response to his earlier call. Langston

testified that he turned the case over to the deputies, so that they would get credit for the DUI arrest, even though Langston was certified to give a breathalyzer test.[1]

Karey Williams was the deputy who took over Delker's case from Chief Langston. Williams also testified that Delker had a strong odor of alcohol, slurred his speech, and had red eyes. Delker also had trouble with his balance, and he staggered when he walked. Williams said that he saw an empty beer can and a whiskey bottle in the car. Williams's car was equipped with a camera, which was running when he arrived at the scene, and which recorded both video and audio of the arrest.[2] Like Langston, Williams determined from calling his dispatcher that Delker's driver's license was suspended. He put Delker in his car, and turned off his camera for the trip to the Lauderdale County Sheriff's Department. When Delker started talking to him, however, he turned the camera back on to record the conversation. Delker asked Williams whether he could take the field sobriety test, which he thought he could pass, but Williams told him he would have a chance to take a blood alcohol test on the Intoxilyzer 8000 machine.

When they arrived at the sheriff's office, Williams gave Delker three field sobriety tests. The first was the "HGN," where Williams moved a pen and watched Delker's eyes as they followed it. Based on the results of that test, Williams believed that he should offer Delker the chance to use the Intoxilyzer; however, he also administered the "walk and turn" test. According to Williams, "The walk-and-turn test, you are required to walk heel to toe, touching heel to toe each step for nine steps in a straight line while keeping your hands down by your side and counting your steps." The test

---

[1] Apparently, the number of arrests made by the sheriff's department determined its eligibility for grant money.

[2] The State introduced the video as evidence at Delker's trial.

requires the officer to determine whether the subject is standing heel to toe during the instructions, whether he steps off the line, misses heel to toe, uses his arm for balance, makes an improper turn, or takes the wrong number of steps. According to Williams, Delker never actually touched heel to toe, made an improper turn, and was off balance. The last test Williams administered was the one-legged stand, where the subject picks one foot up six inches from the ground, looks at the tip of his foot, and counts thirty seconds. Delker was able to hold his foot up for only twelve seconds. After that, Williams again offered to test Delker on the Intoxilyzer, but he refused. Williams charged him with DUI, third offense.

## **PROCEDURAL BACKGROUND**

Delker was tried in the Circuit Court of Lauderdale County on September 17, 2007. A few weeks prior to trial, the court held a hearing on Delker's motion to suppress, in which Delker's attorney argued that the traffic stop conducted by Chief Langston was *ultra vires* and without factual or legal basis. He further argued that, as Langston's initial pursuit did not result from an incident occurring within the Town of Marion's municipal boundaries, there was no basis for it, and Delker was justified in failing to stop. Because Langston did not have probable cause to arrest Delker at the time of the initial pursuit, Delker argued, proof of subsequent illegal acts should be excluded as fruits of the poisonous tree.

The trial judge denied the motion to suppress, finding that Langston had the authority, as a private citizen, to arrest Delker for speeding, even if he was outside the city limits. Since he had the authority to arrest Delker, the court reasoned, Langston also had authority to stop his vehicle. When Delker refused to stop, Langston had the right to follow him to effect the arrest. It was while following Delker that Langston observed the other traffic offenses for which he could arrest him.

When he approached Delker after he stopped, as he had the right to do, Langston saw evidence that Delker had committed the felony of driving under the influence, and he called in for backup from the sheriff's department.

Immediately before trial, defense counsel again moved to suppress evidence, on grounds that Chief Langston did not have authority under law, as a private citizen, to request a breath test. The State argued that it was Deputy Williams, not Chief Langston, who asked Delker to take a breath test. The trial judge denied the motion, noting that Langston arrested Delker only on the misdemeanor traffic offenses, not DUI. Delker was ultimately found guilty of felony DUI, and, as a third-time offender, he was sentenced to five years without eligibility for parole or probation.

Delker timely filed an appeal in the Mississippi Court of Appeals, which disagreed with the trial judge's finding that Chief Langston was authorized, as a private citizen, to arrest Delker outside the town's boundaries. 50 So. 3d at 316. According to the Court of Appeals, that authority only extended to offenses constituting a breach of the peace. *Id*. The court affirmed the conviction, however, on grounds that Langston's error in believing that his pursuit of Delker began within the town's boundaries was neither unreasonable nor bad-intentioned. *Id*. at 317. For that reason, the court held that, even if the arrest was unlawful, Langston's conduct was not sufficiently egregious to trigger the exclusionary rule. *Id*. at 319-20 (citing *Herring v. United States*, 555 U.S. 135 (2009)).

Delker then appealed to the Mississippi Supreme Court, which likewise denied relief. 50 So. 3d at 300. That court declined to rule on the legality of the arrest, assuming that it violated the Fourth Amendment, and moved directly to the issue of whether the exclusionary rule should have been applied. *Id*. at 303. In conducting that analysis, the Mississippi Supreme Court, like the Court of Appeals, also applied *Herring*, noting that federal law requires the court to conduct a balancing

5

test to determine whether the purposes of the exclusionary rule would be served by keeping the evidence at issue from the jury. *Id.* (citing *Kansas v. Ventris*, 556 U.S. 586, 590 (2009); *United States v. Leon*, 468 U.S. 897, 918 (1984)). Finding Chief Langston's error on the town's boundaries to be, at most "an innocent mistake," the court held that his conduct did not rise to the level necessary to invoke the exclusionary rule. 50 So. 3d at 304. Additionally, the court held that the conduct of Deputy Williams was also part of the analysis, and his response to Langston's call for backup was "proper and reasonable." Any deterrent effect created by excluding the evidence in this case would be minimal, given the dearth of similar issues before the courts. *Id*. A marginal deterrent effect would be "significantly outweighed by the 'substantial social costs' and 'harm to the justice system' exacted by exclusion." *Id*. at 305 (quoting *Herring*, 555 U.S. at 141). The court concluded:

> Here, a multiple DUI offender, who was driving under the influence on Christmas Eve, would not be required to answer for his actions because of Langston's error. The counter-effect would be that innocent citizens of this State, who look to the government for protection from drunk drivers, would be subjected to the potentially fatal risk of a recalcitrant, multiple-DUI offender being placed back on their roadways. This risk only adds to the undeniable substantial social costs exacted by drunk drivers through not only fatalities [footnote omitted], but also through grief to the survivors; personal injuries ranging from catastrophic to minor, and property loss. Moreover, harm to the justice system is self-evident [footnote omitted]. Delker has demonstrated a deliberate, reckless, and flagrant disrespect of the laws of this State, despite opportunity after opportunity to alter his conduct.

50 So. 3d at 305. The court went on to state that its ruling was "consistent with recent United States Supreme Court rulings," and also that it "neither expands nor erodes the exclusionary rule, nor does it transform or expand traditional notions of the distinctions between negligence, gross negligence, and reckless disregard." *Id*. at 306. The court thus affirmed the Court of Appeals' decision, to the

6

extent it held that the exclusionary rule should not be applied, and also affirmed the circuit court, which, it held "reached the right result . . . albeit for the wrong reason . . . ."

Delker now seeks relief in this Court, alleging, in his original Petition and his Amended Petition, the following grounds:

> **Ground One:** Delker claimed on direct appeal that his arrest was the result of an unreasonable search and seizure, for which the fruits of such arrest should be suppressed and excluded because the arresting officer was outside his jurisdictional limits at the time he commenced the traffic stop for a minor non-indictable speeding offense, not constituting a breach of the peace nor even a crime. The Mississippi Supreme Court held without discussing the validity *vel non* of Delker's arrest, that it would simply indulge Petitioner's argument that the arrest was a Fourth Amendment violation. Notwithstanding the foregoing, the Mississippi Supreme Court ruled that the benefits from application of the Fourth Amendment's exclusionary rule were outweighed by the costs to society in allowing an alleged criminal to be set free, and that Delker's arrest and conviction should be upheld because he was an alleged "recalcitrant offender." This decision is contrary to, and/or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.
>
> **Ground Two:** The Mississippi Supreme Court's failure and/or refusal to apply the State of Mississippi's then existing exclusionary rule to the facts of Delker's case represents both a denial of equal protection of the law and due process, in violation of the Fourteenth Amendment to the United States Constitution.
>
> **Ground Three:** Did the State of Mississippi violate the due process provisions of the Fifth and Fourteenth Amendments when it failed to accede to Delker's request as to specifically identified exculpatory evidence – i.e., the introduction of the Lauderdale County, Mississippi, Rules of the Road Ordinances, as well as its orders showing that no crime had been committed by Delker allegedly traveling 45 miles per hour in the area of a posted 35 miles per hour speed limit sign?

## **ANALYSIS**

**1.  Standard of Review**

Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") in response to years of complaints about the delay in reviewing habeas petitions,. Pub. L. 104-132, 110

Stat. 1244 (codified at 28 U.S.C. 2254 (2006)); *Baze v. Rees*, 553 U.S. 35, 69 (2008) (Alito, J., concurring) (stating that the AEDPA "was designed to address this problem."). The standard of review is codified at 28 U.S.C. § 2254, which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254. Under this statute, where the state court adjudicates the petitioner's claim on the merits, this court reviews questions of fact under § 2254(d)(2), while questions of law or mixed questions of law and fact are reviewed under § 2254(d)(1). Factual findings are presumed to be correct, and the reviewing court defers to the state court's decision regarding factual determinations. *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). The court independently reviews questions of law and mixed questions of law and fact to determine whether the state court's decision thereon was either "contrary to" or an "unreasonable application of" federal law. *Williams v. Taylor*, 529 U.S. 362, 407-12 (2000).

In 2000, the Supreme Court, in a plurality opinion, addressed the meaning of AEDPA's standard of review. *Williams*, 529 U.S. 362. Justice O'Connor authored the portion of the opinion

that explained the appropriate standard of review under AEDPA, and she limited "federal law" for purposes of AEDPA analysis, to the holdings of the Supreme Court of the United States. *Id.* at 378. *Clearly established* federal law is that which exists at the time of the last state court decision on the merits of the claim. *Id.* at 412; *Greene v. Fisher*, 132 S. Ct. 38, 45 (2011). A state court's adjudication of a claim is *contrary to* clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases or if it decides a case differently than [the Supreme Court has] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court's application of legal precedent to the particular facts of a petitioner's case will be an *unreasonable application* of the law if it identifies the correct federal law but unreasonably applies it to the facts, unreasonably extends the correct legal principle to a new context where it should not apply, or unreasonably refuses to extend the principle to a new context where it should apply. *Williams*, 529 U.S. at 406. The term "unreasonable," was distinguished in *Williams* from "erroneous" or "incorrect;" thus, a state court's incorrect application of the law may be permitted to stand if it is, nonetheless, "reasonable." *Id*.

Recent decisions have reaffirmed the Court's adherence to this interpretation of AEDPA, noting that the appropriate standard of review is much more rigorous in a habeas case than on direct review. *Renico v. Lett*, 559 U.S. 766, 772-73 (2010). As the Court more recently explained, "If this standard is difficult to meet, that is because it was meant to be. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." *Richter*, 131 S. Ct. at 786. Due to the intrusive effect of the writ of habeas corpus on state court decisions, the Court reasoned:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was

9

> so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id*. at 786-87.

Finally, with respect to claims made under the Fourth Amendment, the doctrine of judicial restraint normally precludes federal habeas review of Fourth Amendment claims. *Stone v. Powell*, 428 U.S. 465, 494 (1976) ("[W]here the state has provided an opportunity for full and fair consideration of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."). An opportunity for full and fair litigation means just that: an opportunity. *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002). The burden is on the habeas petitioner to plead and prove the denial of a full and fair hearing in state court. *Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986).

The Supreme Court's interpretation of federal habeas law compels this Court to undertake a rigorous examination of habeas claims, with an eye to protecting the state court's judgment from federal interference. That review must be based solely on the record before the state court and must give the state court's decision the benefit of the doubt there could be no fairminded doubt of error. This is the standard with which this Court has reviewed Delker's claims in this case, and, based on this standard, and for the reasons that follow, this Court finds that he is not entitled to habeas relief.

**2.    The arguments included in Ground One and Ground Two of Delker's Petition are barred from review by *Stone v. Powell*.**

In Grounds One and Two, Delker essentially asserts that his Fourth Amendment rights against an illegal search and seizure were violated. Specifically, he claims that the evidence obtained pursuant to his arrest should have been suppressed because Chief Langston lacked the

10

jurisdictional authority to conduct the traffic stop. As a result, Delker contends that the evidence was inadmissible under the exclusionary rule as "fruit of the poisonous tree," and the state court's rejection of his Fourth Amendment claim was contrary to, or an unreasonable application of, clearly established federal law. *Stone v. Powell* bars our review of these claims.

As explained earlier, Delker bears the burden of proving the denial of a full and fair hearing to overcome this bar to federal review. *Davis v. Blackburn*, 803 F.2d at 1372. A petitioner attempting to overcome the bar must show "that the processes provided by a state to fully and fairly litigate Fourth Amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of Fourth Amendment claims on their merits . . . ." *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1979). Even an error in adjudicating a Fourth Amendment claim, which the Court does not find in this case, does not amount to a deprivation of a full and fair hearing." *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006). Delker has not responded to the State's argument on this procedural bar, and the record demonstrates that he has no argument to advance.

Delker diligently raised his unlawful search and seizure claim in both pre-trial and post-trial proceedings. After extensive oral arguments and briefing on the issue, the trial court issued a written opinion denying his challenges to the arrest, search, and seizure of evidence. The issue was re-asserted on appeal, and the Mississippi Court of Appeals, relying on clearly established federal law, concluded that, even if Delker's arrest was illegal, the evidence obtained as a result should not be suppressed under the exclusionary rule. *Delker v. State*, 50 So. 3d at 319-20 (citing *Herring v. United States*, 555 U.S. at 144). The Mississippi Supreme Court affirmed that the exclusionary rule – a judicially created remedy and not a personal constitutional right – was inapplicable, under

*Herring*, because the substantial societal costs far outweighed the deterrent value of exclusion. *Delker v. State*, 50 So. 3d at 305.

Although Delker maintains that the state court's analysis is flawed, *Stone* applies even if a state court's ruling is erroneous, since an error in adjudicating a Fourth Amendment claim does not deprive a defendant of a full and fair hearing. *Moreno*, 450 F.3d at167; *Balentine v. Quarterman*, 324 F. App'x 304, 307 (5th Cir. 2009) (applying *Stone* in a capital habeas case); *Williams v. Brown*, 609 F.2d at 220 ("[T]he bar of *Stone v. Powell* still applies despite a state court error in deciding the merits of a defendant's fourth amendment claim."); *Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978) ("If the term 'fair hearing' means that the state court must correctly apply federal constitutional law, *Stone* becomes a nullity."). Delker's disagreement with the state court's determination is immaterial; he was afforded a full and fair opportunity to litigate his Fourth Amendment claim in state court. Absent a showing that the state's process is applied so as to prevent the actual litigation of Fourth Amendment claims, he is barred from re-litigating those claims in this Court. *Smith v. Maggio*, 664 F.2d 109, 111 (5th Cir. 1981) (quoting *Williams v. Brown*, 609 F.2d at 220). For these reasons, no habeas relief is warranted on the claims raised in Grounds One and Two.

**3.     Delker has not established the elements necessary to make a successful *Brady* claim.**

In Ground Three, Delker continues to advance the argument that his arrest was illegal. He maintains that, despite the fact that the posted speed limit on Old Country Club Road was 35 miles per hour, local ordinances and orders from the Lauderdale County Board of Supervisors indicate that the actual speed limit was higher. Such evidence, Delker argues, was exculpatory within the

meaning of *Brady v. Maryland*, 373 U.S. 83 (1963), and, had it been disclosed, the result of the trial would have been substantially different.

This argument was raised by Delker in a post-trial motion, and the trial court held a hearing to consider it, but denied relief. The Court of Appeals characterized the argument as "subsumed in the larger issue of whether evidence should have been suppressed because of his alleged illegal arrest. As we have already found that the evidence was legally admitted, we see no need to address this issue any further." 50 So. 3d at 320. To the extent the issues were not a part of the motion to suppress, the court "thoroughly considered them and find them to be without merit." *Id*. The Mississippi Supreme Court granted certiorari only on the Fourth Amendment question and did not consider the *Brady* claim. Respondents concede that the argument was properly raised in state court and denied on its merits.

A *Brady* claimant must establish four elements: (1) the evidence must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; (3) the evidence must be material; and (4) the discovery of the alleged favorable evidence must not be the result of a lack of due diligence. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). To prevail, then, Delker must show that the prosecution suppressed favorable, material evidence that he could not have discovered himself through due diligence. *United States v. Brown*, 650 F.3d 581, 587-88 (5th Cir. 2011); *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002). He has not made that showing.

As an initial matter, "[i]nformation which is already in the public domain cannot, by definition, be withheld or suppressed for *Brady* purposes." *Reed v. Stephens*, 739 F.3d 753, 788 (5th Cir. 2014) (fact that lawsuits had been filed against police department and victim's fiancé was public

information petitioner could have discovered through reasonable diligence.)  By Delker's own admission, the alleged exculpatory evidence was a matter of public record and obtained by defense counsel post-trial.  The State is not required under *Brady* to provide a defendant with exculpatory evidence that is fully available to the defendant through the exercise of reasonable diligence. *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997).  "Nor is the State obligated under *Brady* to disclose evidence that is available from other sources." *Id*. at 559.  Where the evidence, as here, is "equally available to both the defense and the prosecution, the defendant must bear the responsibility of failing to conduct a diligent investigation." *Kutzner*, 303 F.3d at 336 (citing *Herrera v. Collins*, 954 F.2d 1029, 1032 (5th Cir. 1992)).

Further, it is not entirely clear that the allegedly withheld evidence is favorable.  The local ordinances do not clearly establish that the posted 35 mile per hour speed limit was erroneous, and, as Respondents argue, even if erroneous, Delker was still obligated under state law to obey the posted speed limit, unless otherwise instructed by an officer.  Miss. Code Ann. § 63-3-313 (1972 & Supp. 2014) ("No driver of a vehicle shall disobey the instructions of any official traffic-control device placed in accordance with the provisions of this chapter, unless at the time otherwise directed by a police officer."); *see also Harrison v. State*, 800 So. 2d 1134, 1138 (Miss. 2001) (holding that driver could be stopped even if officers made a mistake on the applicable speed limit, so long as the mistake was based on good faith and is reasonable, as "the question of probable cause does not turn upon an ultimate finding of guilt of the offense for which one was stopped.").

Finally, even if the Court were to conclude that the Lauderdale ordinances were favorable, Delker has not demonstrated that the evidence is material.  For *Brady* purposes, materiality is shown if there exists a "'reasonable probability' that had [the evidence in question] been disclosed the

14

result at trial would have been different." *Dickson v. Quarterman*, 462 F.3d 470, 477 (5th Cir. 2006) (quoting *Banks v. Dretke*, 540 U.S. 668, 699 (2004)). Here, Delker argues that, had the evidence been introduced, a defense instruction on the alleged illegality of the arrest would have been granted.[3] Delker, however, has not shown that, but for the suppression of the Lauderdale ordinances, no reasonable jury would have found him guilty of driving under the influence. He has, therefore, failed to show that the prosecution suppressed exculpatory evidence that would have had a material impact on his trial. Accordingly, Delker has failed to prove that the state courts' denial of relief on this issue was contrary to, or an unreasonable application of, clearly established federal law.

For all of these reasons, it is the recommendation of the undersigned United States Magistrate Judge that this habeas petition should be dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party, within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation shall

---

[3] Delker offered such an instruction, which was refused, that provided, in relevant part: "If you should find that the State of Mississippi has failed to prove beyond a reasonable doubt that the Defendant, James Robert Delker, was speeding at the time Chief Langston initiated his traffic stop, then you must find the Defendant not guilty of any and all charges."

bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 11th day of February, 2015.

       /s/ Linda R. Anderson      
UNITED STATES MAGISTRATE JUDGE